David C. ROBINSON, Plaintiff,

v.

VICTORY CARRIERS, INC., 647 Fifth Avenue, New York, New York 10022, Defendant and Third-party Plaintiff,

v.

RYAN STEVEDORING CO., Inc., Third-party defendant and Fourth-party plaintiff,

v.

UNITED STATES of America, Fourth-party defendant and Fifth-party plaintiff,

v.

DANIEL WOODHEAD COMPANY, 220 Huehl Road, Northbrook, Illinois 60062

and

Wilmington Electrical Supply Co., 1110 Chestnut Street, Wilmington, North Carolina, Fifth-party defendants.

Civ. No. 1305–A.

United States District Court
E. D. North Carolina,
Wilmington Division.

Dec. 29, 1969.

Stuart V. Carter, Norfolk, Va., A. A. Canoutas, Wilmington, N. C., for plaintiff.

George T. Clark, Jr., George Rountree, Jr., Rountree & Clark, Wilmington, N. C., for defendant and third-party plaintiff.

Daniel Lee Brawley, Alan A. Marshall, Marshall & Williams, Wilmington, N. C., for third-party defendant and fourth-party plaintiff.

Alfred H. O. Boudreau, Jr., Hall Baetz, United States Department of Justice, Washington, D. C., for fourth-party defendant and fifth-party plaintiff.

John F. Crossley, Wilmington, N. C., for fifth-party defendants.

WIDENER, District Judge, by Assignment.

This is an action initiated by David C. Robinson, a longshoreman, against the owner of the SS AMES VICTORY under the General Maritime Law, including a breach of warranty of seaworthiness, for

money damages for injuries sustained by him while performing his longshoring duties aboard the vessel for his employer, Ryan Stevedoring Co., Inc. At the time of the accident the vessel was berthed at Sunny Point, North Carolina, a United States Government terminal on the Cape Fear River south of Wilmington. Ryan Stevedoring Co., Inc., performed the stevedoring work in question at the terminal pursuant to a written contract with the United States of America. Victory Carriers, Inc., the shipowner, seeking indemnity, made Ryan a third party defendant. The United States was made a fourth party defendant by Ryan, with the stevedore's action being based on the Government's alleged breach of the written contract and breach of warranty. The United States in turn made fifth parties defendant both the manufacturer and distributor of a portable hand light which the longshoreman alleged was defective and had rendered the vessel unseaworthy, proximately causing his accident and resulting injuries. The United States also counterclaimed against Ryan alleging breach of contract, breach of warranty, and negligence.

The case, by agreement of all parties, was tried with a jury which found a Special Advisory Verdict as the answers to fifteen questions submitted to it. The law under which the case was tried *was agreed upon by all parties* and is stated succinctly in the fifteen questions which are hereinafter copied.

It should be emphasized that questions 1. and 2. for the jury were originally phrased as follows:

"1. At the time of the accident, was the portable light defective, and if so, was the defect of such a nature as to render the vessel unseaworthy, that is to say, was the portable light not reasonably fit and suitable for the purpose or use intended?

"2. If the answer to question 1 is 'yes,' was the defective light a proximate cause of the plaintiff's fall and alleged injuries?"

Near the end of the trial the plaintiff, by signed written request, changed the phrasing of questions 1. and 2. to that below written. Thus the issue of unseaworthiness was submitted to the jury *at the plaintiff's request*, not the more simple issue as originally phrased of whether or not the light was fit and suitable for the purpose or use intended.

The fifteen questions of the Special Advisory Verdict, and the jury's answers follow:

"1. At the time of the Plaintiff's accident was the portable light defective, that is to say, not reasonably fit for the purpose and use intended, thereby rendering the vessel unseaworthy? no

"2. If the answer to question 1 is 'yes', was such unseaworthiness a proximate cause of the Plaintiff's fall and alleged injuries?_____

"3. Was the Plaintiff guilty of any contributory negligence which contributed in any degree as a proximate cause of any injuries sustained by the Plaintiff? no

"4. If the answer to question 3 is 'yes', state in what percentage the Plaintiff's own negligence contributed to his injury?_____

"5. Did the Fourth-party defendant, United States of America, provide Ryan Stevedoring Co., Inc. a portable light which was defective, and in so doing breach its warranty to provide an adequate light, which was suitable and fit for its intended use? no

"6. If the answer to 5 is 'yes', could Ryan Stevedoring Co., Inc. have discovered such defect by cursory inspection?_____

"7. Did Ryan negligently load the hold of the AMES VICTORY so as to create an unsafe hold condition? no

"8. If the answer to question 7 is 'yes', was such condition a proximate cause of the injury to the Plaintiff?

"9. If the answer to question 7 is 'yes', was such condition created solely as a result of specific directions of the United States through its Contracting Officer? _____

"10. Did Ryan's methods of loading and covering the hold of the AMES VICTORY create an unsafe hold condition, thereby breaching warranties by Ryan that they would perform services to the United States in a workmanlike manner? _no__

"11. If the answer to question 10 is 'yes', was such a breach of warranty a proximate cause of Plaintiff's injury? _____

"12. If the answer to question 10 is 'yes', was such condition created solely as a result of specific directions of the United States through its Contracting Officer? _____

"13. Did the Fifth-party defendants, Wilmington Electrical Supply Co., and Daniel Woodhead Co. sell to the United States of America parts of the portable light in a defective condition and thereby breach a warranty that the portable light was suitable and fit for its intended use? no _____

"14. If the answer to question 13 is 'yes', was such defective condition approximate cause of the injury to the Plaintiff? _____

"15. State the amount of Plaintiff's damages, if any? $ ____

/s/ Paul B. Willetts
FOREMAN

October 25, 1969"

The longshoreman contended that while he was in the hold of the vessel, in a confined area, shoring up small arms ammunition, the electric portable hand light he was carrying began to spark and smoke. The light was supplied with current through an extension cord to the ship's d. c. power supply on the main deck at the hatch being worked. It was of heavy construction, with a light bulb encased inside of a thick, transparent glass globe, which was screwed into the light handle, making the light itself vapor proof. The bulb and globe were encased in a heavy wire protective basket. The handle and globe socket were of heavy resilient plastic or rubber.

Plaintiff's evidence tended to show that the light sparked and smoked while he was shoring up the ammunition; that he brought the light out of the lower 'tween deck, the hatch to which had been covered with hatch boards, except for an area near the access ladder that had been left open; that he then proceeded on up the access ladder from the 'tween deck toward the main deck after leaving the light on the 'tween deck hatch boards; that it was his purpose to disconnect the light's extension cord from the ship's power supply on the main deck; and that as he reached the top of the ladder he blacked out, falling backward to the 'tween deck hatch boards and suffering certain injuries. Plaintiff offered no medical, and very little other credible, evidence to connect his blackout with his claim of the light having smoked and sparked.

Various defendants' witnesses offered evidence that the portable hand light could not and did not emit smoke beyond the protective globe, although it did smoke inside of the protective globe. No evidence was offered that any sparks were emitted beyond the protective globe.

There was credible evidence from an electrician employed at Sunny Point, who inspected the lamp in question, that the only thing wrong with the lamp was that the bulb was loose in the socket, which could have caused sparks and smoke *inside* the globe; that there were no defects in the electrical connections; that the globe was tightly secured; that there was no indication of smoke or sparks outside the globe; and that a packing nut in the handle of the lamp was tightly secured. There was also credible testimony from one of Robinson's fellow employees, who was present and saw Robinson coming up the ladder, that the light was not emitting smoke

when he saw it only seconds after Robinson fell from the ladder. The jury obviously believed these witnesses. The only fair inference to be taken from their testimony, as well as testimony of other witnesses for defendants, is that the safety light obviously and properly performed its safety function and did not create any unsafe hold condition in the AMES VICTORY.

All evidence was to the effect that the component parts of the light were manufactured by Daniel Woodhead Co.; were distributed by Wilmington Electrical Supply Co.; and were purchased by the United States of America to use at the terminal for the use to which put by the longshoreman at the time of the accident. The component parts of the light were assembled by Government electricians and a bulb inserted. The assembled light was then supplied to Ryan as required by the written contract between Ryan and the United States of America, and the light in question was brought on board the vessel by an agent of the United States of America for use by the stevedore.

The extent of plaintiff's injuries was in great dispute, with medical testimony on both sides.

In accordance with the verdict of the jury the court finds as facts the following:

1. The portable hand light was not defective; was reasonably fit for the purpose and use intended; and the vessel was not rendered unseaworthy by the use of the light aboard.

2. The plaintiff was not guilty of contributory negligence which contributed in any degree to his injuries.

3. The United States of America did not provide Ryan Stevedoring Co., Inc., with a defective light and did not breach its warranty to provide an adequate portable light which was suitable and fit for its intended use.

4. Ryan Stevedoring Co., Inc., did not negligently load the hold of the AMES VICTORY so as to create an unsafe hold condition.

5. Ryan Stevedoring Co., Inc.'s methods of loading and covering the hold of the AMES VICTORY did not create an unsafe hold condition; and Ryan Stevedoring Co., Inc., did not breach its warranty to the United States of America that it would perform services in a workmanlike manner.

6. Wilmington Electrical Supply Co., and Daniel Woodhead Co., did not sell to the United States of America parts of the portable hand light in a defective condition and did not breach a warranty that the portable light was suitable and fit for its intended use.

The court further finds as facts that no sparks or smoke were emitted from the light, outside the globe, at the time and place in question; that the light in question properly performed its safety function by containing the smoke and arcing; and that the only defect in the light was that the bulb was loose in the socket, which caused arcing and smoke *inside the globe*, but that such arcing and smoke did not create an unsafe hold condition or render the vessel unseaworthy.

From the facts as above found, and after considering the testimony of all the witnesses and the record as a whole, the court is of opinion that the vessel was not unseaworthy; that there was no actionable negligence, breach of warranty, or breach of contract involved between the parties to this action; and that none of them is entitled to recover from the other.

The United States has waived all its claim for attorneys' fees; the shipowner has waived all claim for attorneys' fees against the plaintiff; the stevedore has waived its claim for attorneys' fees against the United States; and the shipowner and the stevedore have requested the court to withhold the award of attorneys' fees in this action, which request will be granted.

An order is this day entered in accordance with this opinion.